Jon D. Graves, Legal Counsel, SC #10554
Hutchinson Correctional Facility
P.O. Box 1568
Hutchinson, KS 67504-1568
Telephone: (620) 625-7253
Jon.Graves@ks.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ALFONSO R. KINNARD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-3148-JWL-JPO |
| ) | |
| SST OFFICER BEARDSLEY, ) | |
| SST OFFICER TOWERS, ) | |
| SST OFFICER JANZEN, ) | |
| HUTCHINSON CORRECTIONAL ) | |
| FACILITY. ) | |
| Defendants. ) | |
| _____) | |

### REPORT IN "MARTINEZ v. AARON" INVESTIGATION

### CIVIL RIGHTS COMPLAINT

On August 11, 2022, plaintiff Alfonso R. Kinnard filed an amended civil rights action pursuant to 42 USC §1983 in the United States District Court for the District of Kansas. (Doc. 6, p.1) At all relevant times plaintiff was an inmate incarcerated in the custody of the Secretary of Corrections of the State of Kansas and was housed at all relevant times at the Hutchinson Correctional Facility.

1

On August 29, 2022, the Court issued an order directing the preparation of a Martinez report. (Doc. 7)

## SUMMARY OF ALLEGATIONS IN PLAINTIFF'S PETITION

Plaintiff was an inmate housed at the Hutchinson Correctional Facility (HCF) at the time his cause of action arose on August 12, 2021. (Doc. 6 p.3)

In his petition, plaintiff indicates he was being transported to a cell when defendants Beardsley, Towers and Janzen beat him, although plaintiff indicates he was following instructions and was not resisting. Plaintiff indicates Towers twisted his wrist causing pain while Beardsley told plaintiff to get up while Towers continued to inflict pain. Plaintiff complained his wrist was being hurt and went to the floor on purpose to stop the infliction of further pain. Then all three defendants, Towers, Beardsley and Janzen picked plaintiff up by the handcuffs and ankle restraints and carried him over 100 yards to his cell. Plaintiff continued to complain about pain. Once inside the cell, Beardsley twisted plaintiff's ankle and foot causing more pain and injury. Plaintiff also states that defendants Towers, Beardsley and Janzen did not try to protect him and repeats that he was not resisting the movement. (Doc. 6 pp. 3-4)

In an attached affidavit plaintiff provides more details of his complaints. (Doc. 6-1)

Plaintiff indicates he was being moved from A3 cellhouse to A1 cellhouse to be medically cleared before being put in a segregation cell. (Doc. 6-1 p.1 para. 2)

During the medical examination defendant Beardsley laughed because plaintiff could not remember why he was being placed in segregation. Plaintiff told Beardsley that it wasn't funny, but Beardsley continued to laugh. The nurse Faye told Beardsley that it wasn't funny. Plaintiff and Beardsley exchanged words, then Beardsley told plaintiff to get up. Defendant Towers

twisted the handcuff on plaintiff's right wrist causing pain while plaintiff was complying with Beardsley's command to get up.(Doc.6-1, p.1 para. 3)

As plaintiff was being escorted to his segregation cell at around 7a.m., Towers continued to hurt plaintiff's wrist, causing plaintiff to lay on the floor in pain.  Then defendants Towers, Beardsley and Janzen used unnecessary force picking up plaintiff, pushing his right arm up behind him and causing plaintiff to scream.  Beardsley made rude statements to plaintiff and then told Towers that plaintiff was a cousin to another inmate who had an altercation with SST officers a few months prior. (Doc. 6-1, p.2 para.4)

Defendant Towers then falsely told the other officers that plaintiff was trying to bite him and the three defendants slammed plaintiff face down on the Rotunda floor, causing injury to plaintiff's head above his left eye and chipping his tooth.  Plaintiff says he was howling in pain at this time and his arms were handcuffed behind his back. (Doc. 6-1, p.2, Para. 5)

The three defendants then picked up plaintiff by the connectors between the handcuffs and leg restraints, hurting plaintiff's wrists and ankles and also pulling at the joints of his arms, shoulders, spine, legs and ankles to carry him 100 yards to his new cell, Isolation Cell 6 in the central unit clinic. (Doc. 6-1, p.3, Para.6)

After arriving at the new cell, defendants slammed plaintiff to the floor.  Defendant Janzen pushed on plaintiff's head while the other defendants cut off plaintiff's clothes. Defendant Beardsley got on one knee, twisted plaintiff's ankle until it popped and continued to cause pain to plaintiff's ankle.  Plaintiff was then left in the cell for nine days with no clothing, bedding, or personal amenities.  He was not allowed to shower and was not provided with eating utensils, causing him to eat with his hands and develop diarrhea. (Doc. 6-1, p. 3, Para 7)

3

The defendant officers caused plaintiff physical trauma to his ankle and psychological trauma. Dr. Baumgardner told plaintiff it would take eight months to get halfway back to normal and will cause plaintiff pain for the rest of his life. (Doc. 6-1, p.3, Para. 9)

Healthcare provider Deb Lundry affirmed Dr. Baumgardner's diagnosis. (Doc. 6-1. p. 4, Para. 10)

Plaintiff's ankle continues to cause him extreme pain. (Doc. 6-1, p.4, Para.11)

In Count I of Plaintiff's complaint, he claims he was subjected to excess use of force in violation of his 8th Amendment rights. (Doc. 6, p. 3)

Plaintiff states he exhausted his administrative remedies by filing two grievances (Doc 6, p.4)

Plaintiff's request for relief seeks a declaratory judgment that defendants Towers, Beardsley and Janzen violated his 8th Amendment rights while moving him to his cell.(Doc 6, p. 5)

Plaintiff seeks a preliminary and permanent injunction to prevent defendants Towers, Beardsley and Janzen from using force against plaintiff when he is not resisting.

Plaintiff requests compensatory damages of $1,000,000 jointly and severely against defendants Towers, Beardsley and Janzen.

Plaintiff requests Punitive damages of $1,000,000 against defendants Towers, Beardsley and Janzen. (Doc. 6, p. 5)

Plaintiff sues defendants Towers, Beardsley and Janzen in their individual and official capacities and alleges they were all acting under color of state law. (Doc. 6 pp. 1-2)

Plaintiff seeks a jury trial, recovery of his costs and any additional relief the court deems just, proper and equitable. Doc. 6, p. 5)

## UNCONTROVERTED STATEMENT OF FACTS

### I. PLAINTIFF POST FILING INFORMATION

Plaintiff, Alfonso Kinnard KDOC #83386, is an inmate legally incarcerated in the custody of the Secretary of Corrections, State of Kansas. Plaintiff has five active felony convictions. Plaintiff is currently serving sentences for the convictions of one count each of obstructing legal process, robbery and sale of opiates. He also has convictions for two counts of aggravated battery. Plaintiff had been housed at HCF since September 17, 2012, until he moved to the El Dorado Correctional Facility on December 22, 2021, and then to the Larned Correctional Mental Health Facility on May 19, 2022. (See Kasper Sheet Exhibit 1)

Plaintiff was sent a letter on August 31, 2022, asking him if he had anything to add to this report. Plaintiff has not responded. During the preparation of this report, counsel noted that the letter had been sent to plaintiff at his old housing address at the Hutchinson Correctional Facility. The letter was not returned to counsel and presumably was forwarded on to plaintiff. (Exhibit 2)

### II. USE OF FORCE AGAINST PLAINTIFF ON AUGUST 12, 2021

Plaintiff complains that the use of force against him on 8/12/21 was not necessary and more force than necessary was used, resulting in him being subjected to cruel and unusual punishment.

5

On August 11, 2021, beginning at 5:43 p.m. at the south unit of HCF, plaintiff was by the basketball court area, started screaming, became aggressive and loud, removed all his clothes and refused orders from security staff to submit to restraints. After chemical spray was utilized, plaintiff complied and lay on the ground unresponsively while handcuffs, belly chains and ankle restraints were applied. Plaintiff was thought to be under the influence of some substance and was moved to the central maximum security unit of HCF. (Exhibits 9 & 20)

Plaintiff was in cell A3-137 overnight and at approximately 7:45 was found to have a sheet tied around his neck and was non-responsive to officers. A response team was called to the cell, removed the sheet from plaintiff's neck and transported plaintiff to the A2 multipurpose room for a medical examination and determination where plaintiff should be housed in light of what appeared to be a suicide attempt. (Exhibit 14)

Martha Miller R.N. examined plaintiff and found that he had no apparent injuries. His demeanor was combative, aggressive, depressed and irritable. After plaintiff was non-responsive to Nurse Miller, plaintiff raised his voice to officers and was removed from the examination room. Plaintiff was to be transferred to isolation cell six in the infirmary, where he would be placed on crisis level three and would be under constant observation until the crisis level was lowered. (Exhibits 13 & 21)

Special Security Team officers (SST), including defendants Beardsley, Towers and Janzen, and other SST officers Zager, Schweizer and Watts were present and escorted a walking plaintiff from the multipurpose room to the front gate of A1-2 cellhouse and then to the infirmary. Defendants Towers and Janzen were responsible for plaintiff's arms, Towers on the left arm and Janzen on the right. (Exhibits 3, 4, 5 & 13)

Just outside the gate of A1-2 cellhouse, plaintiff announced "…fucken carry me mother

6

fuckers. I am going to make you work." and then dropped to his knees and face. Plaintiff was then picked up by SST officers with one on each arm (Towers left and Janzen right) and one with both legs (Schweizer) and was carried across the rotunda toward the infirmary. When approximately half-way to the infirmary, plaintiff arched his body, turned his head sideways and tried to bite SST Towers in either the thigh or groin. Plaintiff was immediately placed on the floor to protect the officer and to gain control of plaintiff. A spit mask was placed on plaintiff's head, leg restraints were placed on plaintiff's ankles and he was then taken the remainder of the way to isolation cell six. Towers remained on the left arm, Janzen on the right arm and Schweizer had plaintiff's left leg and Beardsley had his right leg. (Exhibits 3, 4, & 5)

As the team entered the cell with plaintiff, Towers had to release the left arm due to the narrow entryway into the cell, leaving Janzen responsible for both arms and Beardsley on both legs. Plaintiff's clothes were cut off as per protocol for an inmate placed on crisis level 3. Janzen and Beardsley maintained control of plaintiff's hands and feet as the clothing was removed. When all security staff had exited the cell except Beardsley and Janzen, removed the restraints, Beardsley first backed out and then Janzen. and security staff left the cell. Plaintiff immediately stood up and began walking around and speaking. (Exhibits 3, 4, & 5)

The three defendant officers didn't observe any injury to plaintiff's wrists, hands, ankles or feet and didn't hear plaintiff complain of any pain. (Exhibits 3, 4 & 5)

Security video from various perspectives documents the entire movement of plaintiff from inside A2 cellhouse to when he was delivered to isolation cell six. (Exhibit 10) The video is in a mixed order. To best follow it from beginning to end, by the titles on the video segments:

    A2-Panel Box

    A2-Front

    Rotunda A Cellhouse

    Rotunda South Entrance

    Hallgate North

    Hallway South End

    Crisis Hall East

    Crisis Hall West

    Crisis Cell 6

The estimated distance from A1-2 cellhouse entrance where plaintiff dropped to his knees and refused to walk, to the hall gate where plaintiff tried to bite defendant Towers and was further restrained was approximately 85 feet. From the hall gate to the infirmary with plaintiff in hand and leg restraints was approximately 106 feet and a short distance further through the security gates to isolation cell six. (Exhibit 6)

Plaintiff was issued disciplinary report 21-08-140S for disobeying orders, threatening or intimidating and for being in a state of altered consciousness for the events of August 11, 2021, at the south unit. Plaintiff pled not guilty to all three charges, didn't seem to have any recollection of the events at the south unit and didn't explain what happened. He was convicted as charged. (Exhibits 7 & 9)

Plaintiff was issued disciplinary report 21-08-159 for the events of August 12, 2021, at the central unit for disobeying orders to keep walking, for threatening or intimidating by threatening to have his family "get" the officers and for assault for trying to bite defendant

Towers. Again, plaintiff pled not guilty, but then apologized to defendant Towers for trying to bite him in the leg. Plaintiff was quoted in the decision as saying "I wasn't trying to threaten or hurt you CPL towers. I want to apologize to you. I lost my mind I guess." Plaintiff was convicted as charged. (Exhibit 8)

### III. MEDICAL INFORMATION

8/11/21 Plaintiff was at the minimum security south unit of the Hutchinson Correctional Facility and at 5:42 p.m. appeared to be under the influence of something. He was sitting near the basketball court with his pants and underwear around his ankles. He was sprayed with OC chemical spray and his hands and ankles were restrained. He was non responsive to touch. After being transferred by wheelchair to the south unit clinic he became responsive, was able to assist in having his pants and underwear pulled up and he was able to sit in the wheelchair to be transferred to the central unit. He denied being high. (Exhibit 19)

Once plaintiff was transferred to the central unit he remained responsive and agitated. He denied being suicidal or homicidal and had no recollection of why he was moved to the central unit. He again denied being high. (Exhibit 19)

8/12/21 At 7:45 a.m. plaintiff is found in his cell with a sheet tied around his neck and was not responsive to security staff who removed the sheet and escorted him to the examination room. He was combative, aggressive, depressed and irritable. He had no apparent injuries. He became agitated, raised his voice to officers and was escorted out of the exam room. At 8:26 a.m. following the use of force to move plaintiff to the clinic, he was seen by the nurse. Plaintiff refused to talk to the nurse and covered his face. Officer reported plaintiff had an injury above his eye, but plaintiff refused to allow it to be inspected and refused treatment. Plaintiff is under constant observation due to suicide attempt. At 1:00 p.m. plaintiff is sitting on his bed, the

scratch is visible, but not bleeding. Plaintiff was asked if he was alright and he nodded in the affirmative. (Exhibit 20)

8/12/21 at 9:09 a.m., plaintiff was placed on crisis level 3, under constant observation and limited on the property he might possess. Those restrictions were that he could have a gown or smock, a security blanket, toilet paper, a mattress and finger food. Plaintiff denied remembering why he was in segregation, but was otherwise not responsive. 12:17 p.m. plaintiff refused to see the psychotherapist.(Exhibit 20)

8/13/21 Crisis level placement and property restrictions continued. Plaintiff had a nurse visit at 11:31 a.m.. He had been skipping meals because he was depressed, but agreed to eat. He also reported a pain scale of zero. (Exhibit 21)

Plaintiff refused to be seen by telepsych clinic on 8/16/21. (Exhibit 22)

Crisis level placement and property restrictions continued unchanged through 8/16 /21, when it was reduced to crisis level 2 on 8/17/21. Plaintiff was then allowed additional property of shower shoes, one book or magazine without staples and was allowed to shower according to protocol. 8/19/21 plaintiff's crisis level was reduced to level 1 and could have additional property of a t-shirt/thermal shirt, a pair of boxer shorts, a Styrofoam cup and may brush his teeth. Plaintiff was removed from crisis level placement on 8/23/21. (Exhibits 22, 23, 24 & 26)

8/19/21 Plaintiff requested service for injury resulting from use of force. (Exhibit 24)

On 8/20/21 plaintiff had a medical visit at which he complained of a bruise on the top of his left foot and his wrists. The ankle showed old bruising , but good range of motion. Plaintiff was able to raise his legs equally and with strength. Plaintiff complained that medical staff had been ignoring his complaints for a week and was reminded that a sick call was available to him

daily, but for security reasons it might not be possible to participate in sick call examination if he refused to talk to the nurse or exhibited behaviors like yelling or banging. Plaintiff reports still having pain in left ankle and that it was still hard to plant his foot when walking. Both thumbs were still tingling. Plaintiff was referred for x-ray. (Exhibit 25)

8/25/21 Chart review regarding use of force was performed. (Exhibit 26)

8/26/21 Plaintiff refused to move back to the A3 restriction unit he was placed in on 8/11/21 when he was moved to central. Because plaintiff refused to move to A3, he was placed in a segregation cell on MRA status in A1 cellhouse. Plaintiff was seen by medical and complained about his left ankle hurting. Plaintiff wanted an x-ray to be taken and was told the doctor would have to approve that. Plaintiff walked into the examination room with a steady gait and did not limp. (Exhibit 28)

Undated Restrictive Housing Daily Round form reflects plaintiff came off crisis level 8/23/21, but as of 8/26/21 didn't want to move to A3 restrictive housing because of issues with officers.(Exhibit 28)

Undated Restrictive Housing Daily Round form reflects that on 9/3/21, plaintiff indicates his desire to move to a different prison because he didn't feel safe with staff because he was beat up. (Exhibit 29)

Restrictive Housing Daily Round form dated 9/7/21 repeated request for transfer to a different prison.(Exhibit 30)

9/8/21 Plaintiff requested service for mental health treatment and reported having trouble sleeping, depressed, traumatized since beat up by black suits. (Exhibit 31)

9/9/21 Plaintiff was seen for a pain in his left foot. Plaintiff reported that his foot was

11

hurt on 8/12/21 when his foot was hit on a metal part of the door while he was wearing shackles. Plaintiff said the pain had subsided since the injury. (Exhibit 32)

On 9/13/21 x-rays had been completed and read by the doctor, who found there to be no fracture. Plaintiff requested transfer to a different prison. Plaintiff requested medical service due to pain shooting from left foot to ankle and reported the pain was getting worse. (Exhibit 33)

9/16/21 Plaintiff reported that the x-ray showed no fracture and Plaintiff wanted an MRI to be performed. Plaintiff wrote that defendant Beardsley torqued his ankle and foot against the leg restraint. Plaintiff refused treatment regarding injury to left foot. The request was refused on 9/17/21. (Exhibits 34 & 35)

9/17/21 Plaintiff repeated his request of 9/16/21 for an X-ray. Plaintiff also attended sick call and asked to have an MRI performed on his ankle. (Exhibit 35)

On 9/19/21 plaintiff attended sick call complaining his foot still hurt and says that a blacksuit twisted it and it popped. (Exhibit 36)

On 9/20/21 plaintiff renewed his request for an MRI.(Exhibit 37)

9/24/21 Plaintiff discussed again the circumstances that led to him being moved into the maximum security facility. (Exhibit 38)

9/27/21 Plaintiff indicated the swelling in his ankle was gone, but the pain was still present and that he still couldn't put a lot of pressure on his foot. He repeated his request for an MRI. Plaintiff attended sick call and complained about his sore ankle. Plaintiff acknowledged the swelling was gone, but stated it was still painful. This time he said Beardsley tried to break his foot and ankle. When plaintiff returned to his cell he was not in acute distress and was not limping. (Exhibit 39)

10/13/21 Plaintiff repeated his request for an MRI and indicated he was in constant pain. (Exhibit 40)

On 10/14/21 Plaintiff attended sick call complaining his foot hurts and all the doctor did was to look at it. (Exhibit 41)

On 10/22/21 healthcare management scheduled plaintiff for a left foot evaluation. (Exhibit 42)

On 11/1/21 plaintiff's left foot was examined in detail. (Exhibit 43)

On 11/8/21 Plaintiff had a mental health visit and mentioned in the course of the visit issues with his ankle that happened when the correctional officers jumped on him. (Exhibit 44)

11/11/21 Same complaint as 10/13/21 (Exhibit 45)

On 11/15/21 plaintiff had a detailed evaluation of his ankle. (Exhibit 46)

11/19/21 x-ray showed no fracture of left food or ankle. (Exhibit 47)

12/02/21 Dr. Bumgaurdner diagnoses ankle as having a ligament strain. (Exhibit 48)

12/09/21 X-rays reviewed.  No evidence of foot issue.(Exhibit 49)

12/17/21 Plaintiff renewed his request to be transferred and indicated he may have PTSD as a result of the 8/12/21 use of force. (Exhibit 50)

12/29/21 Plaintiff still reported constant pain in his foot and ankle and that his foot went numb when he turned it certain ways. Mobic was renewed. No boots were to be worn. (Exhibit 51)

12/30/21 Plaintiff renewed complaint about his ankle to the healthcare provider at EDCF. (Exhibit 52)

1/17/22 Plaintiff repeated his request and was permitted to have examination 1/19/22, but then left exam room before being seen. Dr. Bumguardner directed no further treatment or evaluation. (Exhibit 53)

1/19/22 After being transferred to the El Dorado Correctional Facility, plaintiff advised medical staff that the healthcare provider at the Hutchinson Correctional Facility said an MRI was needed. The Healthcare provider couldn't provide an evaluation because plaintiff left the exam room before it could be performed. It was noted that plaintiff's gait entering the room was normal. (Exhibit 54)

1/26/22 Same complaint as on 1/19/22. (Exhibit 55)

2/15/22 Plaintiff reported his ankle still hurt. (Exhibit 56)

2/16/22 plaintiff made sick call complaining of ankle pain. Nurse noted that ankle was not swollen, range of motion was unlimited, plaintiff walked to the clinic without difficulty and the pain he complained of was on the top of his foot. (Exhibit 57)

5/29/22 Plaintiff repeated the same complaint. Plaintiff noted he transferred to the El Dorado Correctional Facility and received medications while there and was told he would be put in for physical therapy. Plaintiff transferred to the Larned Correctional Mental Health Facility. Healthcare provider responded they would see if he had been referred by the El Dorado Correctional Facility and, if so, would see where plaintiff would be in the approval process if so referred. (Exhibit 58)

5/30/22 Plaintiff repeated the same complaint. (Exhibit 59)

6/02/22 Plaintiff''s complaints repeated and discussed. Physical therapy considered. (Exhibit 60)

6/14/22 x-rays read and mentions nothing related to plaintiff complaints. (Exhibit 61)

7/19/22 Same complaint repeated. Plaintiff's chart was to be reviewed and Tylenol was given to him for pain. (Exhibit 62)

7/20/22 Plaintiff renewed his complaint about his ankle. The healthcare provider noted plaintiff had no swelling and had no abnormal gait or limp when entering the room. Plaintiff's ankle was not tender to touch. Plaintiff could flex and extend ankle with little pain. Plaintiff says he couldn't move it from side to side because of pain. He received Tylenol. (Exhibit 63)

## IV.     ADDITIONAL EXHIBITS

Security video of the August 12, 2021, incident was preserved from the nearby security cameras and supports the statements of the various defendants and witnesses. With the Court's permission, it will be filed conventionally due to its size. Plaintiff cannot possess a copy of the video, but he will be permitted to view the video for a reasonable time upon reasonable notice at his housing facility. (Exhibit 10)

Plaintiff's movement record reflects that he was moved from the HCF South Unit on August 11, 2021, to the central unit cell house A3 cell 137 on prehearing detention due to his behavior. The next day, after attempting self-harm and being examined, plaintiff was moved to the clinic isolation cell and remained there until August 23, 2021, when he was moved to cell A1-230 on disciplinary segregation status. Three days later while still on disciplinary segregation status he moved to cell A1-130. On September 2, 2021, he again moved to cell A2-127 on disciplinary segregation status, which status changed to Other Security Risk on September 3, 2021, and then changed back to disciplinary segregation on September 7, 2021, and then back to other security risk status on which plaintiff remained until December 22, 2021,

when he was moved to the El Dorado Correctional Facility. (Exhibit 15)

The use of force packet involving plaintiff's movement from the South Unit on August 11, 2021, contains narrative statements from officers who observed plaintiff's conduct that caused him to be moved into the central unit of HCF. (Exhibit 9)

The Captain's log book reflects that at 6:11 p.m. on August 11, 2021, plaintiff was transported from the minimum security south unit to the maximum security central unit because he was under the influence and disobeyed orders. (Exhibit 14 Captain's Log p. 11)

The same log reflected that at 7:45 a.m. on August 12, 2021, plaintiff attempted to hang himself while housed in A3 cellhouse cell 137. He was restrained and taken to the multi-purpose room for evaluation. (Exhibit 14 Capt. Log p. 7)

At 7:53, the Captain's Log reflected that plaintiff was creating an emergency at the Hall gate when he tried to bite defendant Towers. Plaintiff was dropped and his arms and legs were secured to regain control of plaintiff. (Exhibit 14 Capt. Log p.6)

Plaintiff's medical and mental health record from August 2021, to August 2022 is made a part of this report. (Exhibit 12)

Plaintiff filed property claim 9669 on August 30, 2021, asking for $4,000.00 for injuries caused by the use of force on August 12, 2021. The claim was investigated and the staff recommendation, dated September 21, 2021, suggested the claim should be denied, in summary, because plaintiff was combative with staff and there appeared to be no negligence involved. (Exhibit 16)

Plaintiff did file grievance number BA0018862 which was investigated by the Hutchinson Correctional Facility regarding his complaints of the use of force on August 12, 2021. The grievance itself is not dated, but was investigated and responded to initially on

16

December 21, 2021.  It was ultimately appeared to the secretary of corrections whose designee actually responded twice, denying the requested remedy in both responses dated February 15 and 16, 2021. (Exhibits 17 & 18)

Internal Management Policy and Procedure 12-111A regards the use of force by staff.  This document is designated as "Staff Read Only" and cannot be provided to plaintiff for his review.  It is provided to the Court as a sealed document with a protective order.  Plaintiff will not be provided a copy of this policy. (Exhibit 11)

## CONCLUSION

The force used in restraining plaintiff was progressive as his resistance and aggressiveness increased.  Had plaintiff simply walked to the isolation cell, there would have been no further use of force than his arms being held as he was escorted.  Plaintiff's decision to refuse to walk made it necessary to carry him 85 feet.  After he attempted to bite defendant Towers, he was further restrained and carried the last 106 feet to the infirmary door and then inside.  Plaintiff complained he was carried 100 yards.

The video of the event is complete and tracks the entire event on August 12, 2021.  The video shows no excessive force being used.  In fact, the video and the medical oversight indicates that plaintiff was not injured in the course of the move and only began complaining days later.

The three defendants, for their roles in the movement, did not appear to do anything to intentionally injure plaintiff and did not hear him complain of pain or injury.  In fact, as soon as plaintiff was released in the cell he popped up and walked around the cell with no difficulty.

17

Plaintiff does appear to have exhausted his administrative remedies.  Plaintiff was convicted of related disciplinary offenses, which convictions stand.

Plaintiff's complaints of injury began days after the movement of plaintiff to the isolation cell on crisis level.  Plaintiff initially reported he had a sore spot on the top of his foot from it being banged on a metal part of the cell  door.  Later he reported that security staff hurt him during the move and only after that did he decide the defendant Beardsley had twisted his ankle until it popped.

If there was any injury to plaintiff, it seems to be de minimus and wholly brought on by his own misbehavior.

No violation of plaintiff's constitutional rights are seen here.

                                 Respectfully submitted,

                                  /s/ Jon D. Graves_____
                                 Jon D. Graves #10554

CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: Matt Shoger, Assistant Attorney General, Memorial Bldg., 2nd Floor, 120 S.W. 10th Ave., Topeka, KS 66612-1597 and by mailing a copy to:

Alfonso R. Kinnard #83386
Larned Correctional Mental Health Facility
1318 KS Highway 264
Larned, KS 67550-9304

                                 /s/ Jon D. Graves
                                 Jon D. Graves

**EXHIBIT LIST**

1. Inmate Data Summary sheet for plaintiff Alfonso R. Kinnard
2. Letter from Counsel dated August 31, 2022, asking plaintiff for additional statement
3. Affidavit of Edwin Towers
4. Affidavit of Adam Janzen
5. Affidavit of James Beardsley
6. Affidavit of Steven Hullett
7. Disciplinary Report 21-08-140S
8. Disciplinary Report 21-08-159
9. Use of Force Packet #3269
10. Security Videos of Forced Cell Move (part of Use of Force Packet, but filed separately and under seal)(Plaintiff will be allowed to view, but not possess the DVD for security reasons)
11. Internal Management Policy and Procedure 12-111A (filed under seal and with protective order)(Plaintiff cannot view or possess for security reasons)
12. Plaintiff's full medical record from August 2021, to August 2022 (filed under seal, but will be provided to plaintiff.
13. Incident Report 8/12/21
14. Captain's Log for 8/11/21-8/12/21
15. Plaintiff's movement record
16. Plaintiff's property claim #BA0009669
17. Grievance #BA0018862
18. Grievance #BA0018862 (same as previous grievance, but with different date)
19. Plaintiff's Medical Record for 8/11/21
20. Plaintiff's Medical Record for 8/12/21
21. Plaintiff's Medical Record for 8/13/21
22. Plaintiff's Medical Record for 8/16/21
23. Plaintiff's Medical Record for 8/17/21
24. Plaintiff's Medical Record for 8/19/21
25. Plaintiff's Medical Record for 8/20/21
26. Plaintiff's Medical Record for 8/23/21
27. Plaintiff's Medical Record for 8/25/21
28. Plaintiff's Medical Record for 8/26/21
29. Plaintiff's Medical Record for 9/3/21
30. Plaintiff's Medical Record for 9/7/21
31. Plaintiff's Medical Record for 9/8/21
32. Plaintiff's Medical Record for 9/9/21
33. Plaintiff's Medical Record for 9/13/21
34. Plaintiff's Medical Record for 9/16/21
35. Plaintiff's Medical Record for 9/17/21
36. Plaintiff's Medical Record for 9/19/21
37. Plaintiff's Medical Record for 9/20/21
38. Plaintiff's Medical Record for 9/24/21
39. Plaintiff's Medical Record for 9/27/21

**40.**   Plaintiff's Medical Record for 10/13/21
**41.**   Plaintiff's Medical Record for 10/14/21
**42.**   Plaintiff's Medical Record for 10/22/21
**43.**   Plaintiff's Medical Record for 11/1/21
**44.**   Plaintiff's Medical Record for 11/8/21
**45.**   Plaintiff's Medical Record for 11/11/21
**46.**   Plaintiff's Medical Record for 11/15/21
**47.**   Plaintiff's Medical Record for 11/19/21
**48.**   Plaintiff's Medical Record for 12/2/21
**49.**   Plaintiff's Medical Record for 12/8/21
**50.**   Plaintiff's Medical Record for 12/17/21
**51.**   Plaintiff's Medical Record for 12/29/21
**52.**   Plaintiff's Medical Record for 12/30/21
**53.**   Plaintiff's Medical Record for 1/17/22
**54.**   Plaintiff's Medical Record for 1/19/22
**55.**   Plaintiff's Medical Record for 1/26/22
**56.**   Plaintiff's Medical Record for 2/15/22
**57.**   Plaintiff's Medical Record for 2/16/22
**58.**   Plaintiff's Medical Record for 5/29/22
**59.**   Plaintiff's Medical Record for 5/30/22
**60.**   Plaintiff's Medical Record for 6/2/22
**61.**   Plaintiff's Medical Record for 6/14/22
**62.**   Plaintiff's Medical Record for 7/19/22
**63.**   Plaintiff's Medical Record for 7/20/22


/s/ Jon D. Graves_____                             ___November 23, 2022__
Jon D. Graves                                                                  Date


Subscribed and sworn to before me this 23rd day of November, 2022.


                                        __/s/ Rhonda K. Severin_____
                                                Notary Public

My Commission Expires:  November 18, 2026