IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ALFONSO R. KINNARD,

    **Plaintiff,**

    v.                                        CASE NO. 22-3148-JWL-JPO

KANSAS DEPARTMENT OF
CORRECTIONS, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Although Plaintiff is currently incarcerated at the Larned Correctional Mental Health Facility in Larned, Kansas, his claims arose during his incarceration at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed *in forma pauperis*. On August 29, 2022, the Court entered a Memorandum and Order (Doc. 7) directing the officials responsible for the operation of HCF to file a *Martinez* Report. The Court's Memorandum and Order provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 7, at 1.) The *Martinez* Report (the "Report") has now been filed. (Doc. 12.)

**I. Nature of the Matter Before the Court**

Plaintiff alleges in his Amended Complaint (Doc. 6) that in August 2021, while incarcerated at HCF, he was subjected to excessive force in violation of the Eighth Amendment. Plaintiff alleges that on August 12, 2021, he was being escorted from A3 Cell House to A1 Cell House at HCF to be medically cleared by Nurse Faye Vargas prior to being placed in segregation. (Doc. 6–1, at 1.) Plaintiff alleges that during the medical visit, Defendant

1

Beardsley started to laugh when Plaintiff could not remember why he was being placed into segregation. *Id*. Although Plaintiff and Nurse Vargas told Beardsley it was not funny, Beardsley continued to laugh. *Id*. Plaintiff then said, "Man nothing is funny," to which Beardsley replied: "Shut the fuck up, your seg clearance is done, get up." *Id*.

Plaintiff alleges that Defendants Beardsley, Towers, and Janzen physically beat Plaintiff while he was following instructions, not physically resisting, and in physical pain. (Doc. 6, at 3.) Plaintiff claims that Towers twisted Plaintiff's wrist after Plaintiff complied with Beardsley's command to "get up." Plaintiff laid on the floor of the Rotunda in an attempt to stop Towers from inflicting further pain. Plaintiff alleges that instead of asking Plaintiff why he laid down, the Defendants picked up Plaintiff's body while pushing Plaintiff's right arm upwards behind Plaintiff's back while Plaintiff was in handcuffs. *Id*. at 4. Plaintiff alleges that Defendants "slammed Plaintiff's body on the ground" instead of using a wheelchair to transport Plaintiff to the cell. *Id*. Defendants picked Plaintiff up by the chains of the handcuffs and ankle shackles to carry Plaintiff "over 100 yards to the cell." *Id*. Plaintiff claims that Beardsley twisted Plaintiff's ankle and foot, and none of the Defendants attempted to protect Plaintiff. *Id*.

Plaintiff alleges that Beardsley made derogatory comments and told Towers that another inmate that had been in an altercation with SST Officers a few months prior was Plaintiff's cousin. (Doc. 6–1, at 2.) Plaintiff alleges that Towers falsely claimed that Plaintiff was trying to bite him. *Id*. Plaintiff alleges that Beardsley, Towers, and Janzen slammed Plaintiff face down while he was handcuffed on the floor of the Rotunda, causing Plaintiff to suffer a head injury above his left eye, a chipped tooth, and physical pain. *Id*.

Plaintiff alleges that once he was inside of the cell, Defendants slammed him to the ground and Janzen put all of his weight on Plaintiff's head, pushing it against the floor, while the

other officers cut off Plaintiff's clothes. *Id*. at 3. Beardsley twisted Plaintiff's ankle and foot until Plaintiff heard a pop. *Id*. Plaintiff claims he was then left in the cell for nine days, naked with no bedding or personal amenities or even a shower. *Id*. Plaintiff alleges that he was not given utensils and had to eat his food with his dirty, bare hands, causing Plaintiff to experience painful diarrhea. *Id*.

Plaintiff names as Defendants: (fnu) Beardsley, SST/Officer at HCF; (fnu) Towers, SST/Officer at HCF; and (fnu) Janzen, SST/Officer at HCF.[1] Plaintiff seeks declaratory relief; a preliminary and permanent injunction ordering Defendants to stop using force against Plaintiff when Plaintiff is not being resistant; $1,000,000 in compensatory damages; and $1,000,000 in punitive damages. *Id*. at 5.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal

---

[1] Plaintiff also named the Kansas Department of Corrections ("KDOC") as a defendant. The Court previously dismissed KDOC as a defendant and entered it on the docket as an Interested Party for purposes of preparing the *Martinez* Report.

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the

complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III.  DISCUSSION

#### 1. Excessive Force

Plaintiff claims the Defendants used excessive force in violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (stating that "claims of excessive force involving convicted prisoners arise under the Eighth Amendment").  The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986).  Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

Plaintiff must prove both an objective component and subjective component to succeed on an excessive force claim. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). To establish the objective component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. Not every isolated battery or injury to an inmate amounts to a federal constitutional violation. *See Hudson*, 503 U.S. at 9 (stating that not "every malevolent touch by a prison guard gives rise to a federal cause of action.") (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")). To establish the subjective component, Plaintiff must show that Defendants "act[ed] with a sufficiently culpable state of mind." *Cochran*, 339 F.3d at 1212 (citation omitted).

The Report provides that Plaintiff's refusal to walk to the cell made it necessary for the Officers to carry him 85 feet, and after Plaintiff attempted to bite Towers, he was further restrained and carried the last 106 feet to the infirmary door and then inside. The Report states that the video of the incident and the medical oversight indicates that Plaintiff was not injured in the course of the move and only began complaining days later. Plaintiff was convicted of disciplinary offenses in relation to the incident. The Report provides that:

> On August 11, 2021, beginning at 5:43 p.m. at the south unit of HCF, plaintiff was by the basketball court area, started screaming, became aggressive and loud, removed all his clothes and refused orders from security staff to submit to restraints. After chemical spray was utilized, plaintiff complied and lay on the ground unresponsively while handcuffs, belly chains and ankle restraints were applied. Plaintiff was thought to be under the influence of some substance and was moved to the central maximum security unit of HCF. (Exhibits 9 & 20)

Plaintiff was in cell A3-137 overnight and at approximately 7:45 was found to have a sheet tied around his neck and was non-responsive to officers. A response team was called to the cell, removed the sheet from plaintiff's neck and transported plaintiff to the A2 multipurpose room for a medical examination and determination where plaintiff should be housed in light of what appeared to be a suicide attempt. (Exhibit 14)

Martha Miller R.N. examined plaintiff and found that he had no apparent injuries. His demeanor was combative, aggressive, depressed and irritable. After plaintiff was non-responsive to Nurse Miller, plaintiff raised his voice to officers and was removed from the examination room. Plaintiff was to be transferred to isolation cell six in the infirmary, where he would be placed on crisis level three and would be under constant observation until the crisis level was lowered. (Exhibits 13 & 21)

Special Security Team officers (SST), including defendants Beardsley, Towers and Janzen, and other SST officers Zager, Schweizer and Watts were present and escorted a walking plaintiff from the multipurpose room to the front gate of A1-2 cellhouse and then to the infirmary. Defendants Towers and Janzen were responsible for plaintiff's arms, Towers on the left arm and Janzen on the right. (Exhibits 3, 4, 5 & 13)

Just outside the gate of A1-2 cellhouse, plaintiff announced "…fucken carry me mother fuckers. I am going to make you work." and then dropped to his knees and face. Plaintiff was then picked up by SST officers with one on each arm (Towers left and Janzen right) and one with both legs (Schweizer) and was carried across the rotunda toward the infirmary. When approximately half-way to the infirmary, plaintiff arched his body, turned his head sideways and tried to bite SST Towers in either the thigh or groin. Plaintiff was immediately placed on the floor to protect the officer and to gain control of plaintiff. A spit mask was placed on plaintiff's head, leg restraints were placed on plaintiff's ankles and he was then taken the remainder of the way to isolation cell six. Towers remained on the left arm, Janzen on the right arm and Schweizer had plaintiff's left leg and Beardsley had his right leg. (Exhibits 3, 4, & 5)

As the team entered the cell with plaintiff, Towers had to release the left arm due to the narrow entryway into the cell, leaving Janzen responsible for both arms and Beardsley on both legs. Plaintiff's clothes were cut off as per protocol for an inmate placed on crisis level 3. Janzen and Beardsley maintained control of plaintiff's hands and feet as the clothing was removed. When all security staff had exited the cell except Beardsley and Janzen, [they] removed the restraints, Beardsley first backed out and then

> Janzen. . . . Plaintiff immediately stood up and began walking around and speaking. (Exhibits 3, 4, & 5)
>
> The three defendant officers didn't observe any injury to plaintiff's wrists, hands, ankles or feet and didn't hear plaintiff complain of any pain. (Exhibits 3, 4 & 5)
>
> * * * *
>
> Plaintiff was issued disciplinary report 21-08-140S for disobeying orders, threatening or intimidating and for being in a state of altered consciousness for the events of August 11, 2021, at the south unit. Plaintiff pled not guilty to all three charges, didn't seem to have any recollection of the events at the south unit and didn't explain what happened. He was convicted as charged. (Exhibits 7 & 9)
>
> Plaintiff was issued disciplinary report 21-08-159 for the events of August 12, 2021, at the central unit for disobeying orders to keep walking, for threatening or intimidating by threatening to have his family "get" the officers and for assault for trying to bite defendant Towers. Again, plaintiff pled not guilty, but then apologized to defendant Towers for trying to bite him in the leg. Plaintiff was quoted in the decision as saying "I wasn't trying to threaten or hurt you CPL towers. I want to apologize to you. I lost my mind I guess." Plaintiff was convicted as charged. (Exhibit 8)

(Doc. 12, at 6–9.)

The Report shows that force was applied in a good-faith effort to maintain or restore discipline, and not maliciously and sadistically to cause harm. *See Reed*, 1999 WL 345492, at *4; *see also Wilson v. Wilcox*, No. 14-cv-0421-MSK, 2018 WL 1304532, at * (D. Colo. March 13, 2018) ("Because the disciplinary determination is inconsistent with some of Mr. Wilson's allegations . . . the factual findings in the disciplinary determination control, both under *Heck* and consistent with the doctrine of collateral estoppel.") (citing *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999); *Havens v. Johnson*, 783 F.3d 776, 782–83 (10th Cir. 2015)).

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the

factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim of excessive force. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice. The Interested Party shall provide Plaintiff with access to view the security video of the incident. *See* Doc. 11, at 2 (indicating that Plaintiff will be allowed to view, but not possess the CD for security purposes).

**2. Injunctive Relief**

Plaintiff's request for injunctive relief is moot. Plaintiff is no longer incarcerated at HCF. He was moved to the El Dorado Correctional Facility on December 22, 2021, and then to the Larned Correctional Mental Health Facility on May 19, 2022. *See* Doc. 12–1, at 3.

Because Plaintiff's request relates solely to alleged wrongdoing on the part of HCF employees, the Court would be unable to provide Plaintiff with effective relief and his requests for injunctive relief are moot. Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise

jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974). The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement. *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citations omitted).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to plaintiff. Because Plaintiff is no longer incarcerated at HCF, his claims for injunctive relief are moot and subject to dismissal.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **January 3, 2023,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS FURTHER ORDERED** that the Interested Party shall provide Plaintiff with access to view the security video of the incident for use in preparing his response.

**IT IS SO ORDERED**.

**Dated December 5, 2022, in Kansas City, Kansas.**

> **S/ John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**